20 days, stipulates to reduce the verdict to the sum of $2,500 as of the date of the rendition thereof, in which event the judgment is modified.accordingly, and, as so modified, is, together with the order, affirmed, without costs of this appeal to either party. All concur, except SPRING and KRUSE, JJ., who vote for affirmance.

--------

(127 App. Div. 942.)

In re CLEMENT, State Excise Com'r.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

INTOXICATING LIQUORS—PROCEEDINGS FOR REVOCATION OF LICENSE—EVIDENCE—
SUFFICIENCY.

Evidence, on a petition by the state commissioner of excise for an order canceling a liquor tax certificate on the ground that the holder had sold liquor on Sunday contrary to law, *held* to show that liquor had been so sold, notwithstanding evidence that the service thereof was in connection with meals ordered and served.

Appeal from Special Term, Chautauqua County.

In the matter of the petition of Maynard N. Clement, as State Commissioner of Excise, for an order revoking and canceling liquor tax certificate No. 26,223, issued to John W. Renfold. From an order dismissing the petition, the Commissioner appeals. Order reversed, and order directed revoking and canceling the certificate.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Russell Headley and Royal R. Scott, for appellant.
Eleazer Green, for respondent.

WILLIAMS, J. The order should be reversed, with costs, and an order made revoking and canceling the liquor tax certificate, with $30 costs.

The reason alleged for taking away respondent's certificate was that he sold liquor on Sunday, contrary to law. The sales were testified to by four witnesses, special excise agents of the state. There seemed to be no doubt as to the sales of liquor; but it was claimed the service of the liquor was in connection with genuine meals ordered by and served to the witnesses. The evidence given in behalf of defendant to sustain this claim was very unsatisfactory, and in our judgment entirely failed to overcome the evidence given by the petitioner's four witnesses. These men knew what the truth was. They went to defendant's place for the express purpose of ascertaining whether he was violating the law. They could not be mistaken as to the evidence they gave, and if it was untrue they were guilty of deliberate perjury. They were performing a duty as state agents, were under no obligation to testify to anything that was untrue, and we cannot believe the evidence they gave in this proceeding was untrue.

We do not regard it as necessary to enter upon an analysis of the evidence given for defendant; but a careful reading of it fails to throw any doubt upon the evidence given for petitioners. This being so, we cannot permit this order to stand. The excise law must be enforced, and the courts should not permit any flimsy pretexts to prevent the revocation of licenses that have been violated. We think this

a case where even the apparently well-considered determination of the Special Term should be reversed, and an order substituted which is in accord with the truth.

Order reversed, with costs, and order directed revoking and canceling the liquor tax certificate, with $30 costs. All concur.

---

(60 Misc. Rep. 145.)

MEAD et al. v. TURNER, Village President. et al.

(Supreme Court, Special Term, Westchester County. July, 1908.)

1. MUNICIPAL CORPORATIONS—COLLECTION OF TAXES—SUIT TO RESTRAIN—TAX-PAYER'S ACTION.

A taxpayer's action to enjoin municipal authorities from collecting a tax levied to pay the expenses of a public improvement and from entering into any contract for the improvement, etc., can be maintained only on clear proof that the authorities are about to act, or have acted, illegally or fraudulently.

2. SAME—POWER TO TAX FOR SPECIAL PURPOSE—PUBLIC IMPROVEMENTS.

Health Law, Laws 1893, p. 1519, c. 661, § 72, provides that, where the state board of health has made an order requiring one municipality to put in a sewer system for the protection of the water supply of another, the latter shall pay the cost of the system. To protect the water supply of a city, the city and a village entered into a contract that the village should install a sewer system within its own limits and the city would provide the outlet and disposal works; each paying for its own part. Held, that a village taxpayer could not enjoin the collection of a tax to pay the cost of sewers in the village, on the ground that the city was bound to pay the cost of the whole work, since the statute requiring the city to pay was not applicable; the state board of health having made no order.

3. SAME—SEWERS—POWER TO MAKE IMPROVEMENT.

The power of a village, under the village law, to construct a sewer system at its own expense, is not abridged by orders made by the board of health, under Health Law, Laws 1893, p. 1519, c. 661, § 72, authorizing the board to require the construction of a sewer for the protection of a water supply, etc.

4. SAME—JUDICIAL SUPERVISION.

The court, in a taxpayer's suit to enjoin the authorities of a village from collecting a tax levied for the construction of a sewer system and from entering into a contract for the construction of the system, has nothing to do with the wisdom of the action of the majority of the voters of the village adopting a proposition for the construction of a sewer system.

5. SAME.

Village Law, Laws 1897, p. 440, c. 414, § 260, providing that the board of sewer commissioners of a village shall, before taking proceedings for the construction of a sewer system, prepare a map and plan of a permanent sewer system, with specifications of connections and outlets, or disposal works, does not require the map and plan to embrace every lateral sewer which may become necessary with the growth of the village.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 827.]

6. SAME—CONTRACTS INVOLVING EXPENDITURES—SUBMISSION TO POPULAR VOTE.

Laws 1907, p. 888, c. 428, authorizing the city of New York and a village to enter into an agreement to provide the village with a sewer system, etc., does not provide how the village authorities shall proceed to carry out its part of the agreement, and the provisions of the general village law are applicable, and before levying any tax or issuing any bonds to carry out such agreement the village trustees must obtain special authority from the voters of the village in accordance with the village law.